**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JACKLYN C.,<br><br>                    Plaintiff,<br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Civil Action No. 3:20-cv-01256<br><br>**OPINION** |

CASTNER, District Judge

**THIS MATTER** comes before the Court upon Jacklyn C.'s ("Plaintiff" or "Claimant") appeal from the final decision of the Commissioner of the Social Security Administration ("Defendant" or the "Commissioner"), denying Plaintiff's application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, and Supplemental Security Income ("SSI") pursuant to Title XVI. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, and for good cause shown, the Court affirms the Commissioner's decision to deny Plaintiff social security benefits.

**I.    BACKGROUND**

The Court assumes that the parties are familiar with the factual and procedural background of this case, as described at great length in this Court's Opinion on February 28, 2019, and will only recite further facts as necessary for the resolution of the instant appeal before the Court. (Opinion, Civ. No. 3:16-cv-03468, ECF No. 25.)

A.    **Procedural History**

Plaintiff filed an application for DIB and for SSI alleging disability beginning on March 15, 2012. (Administrative Record ("AR") 192-201, ECF No. 7.)  The applications were initially denied and were denied again on reconsideration. (AR 126-131, 134-139.)  Plaintiff requested a hearing to review her application on a de novo basis, and a hearing was held on September 3, 2015. (AR 140-141, 30-66.)  The Administrative Law Judge ("ALJ") issued a decision on October 22, 2015, denying Plaintiff's application. (AR 11-26.)  Plaintiff then sought review by the Appeals Council, which concluded that there were no grounds for review. (AR 1-6.)

Plaintiff filed suit appealing that decision to the District Court on November 22, 2016. (Complaint, Civ. No. 3:16-cv-03468., ECF No. 1.)   The Court issued an Opinion remanding the matter back to the ALJ. (the "2019 Opinion") (Opinion, Civ. No. 3:16-cv-03468, ECF No. 25.) The Court determined that "the ALJ did not consider all the evidence in posing the hypothetical questions to the vocational expert and that they did not accurately portray claimant's impairments." (*Id.* 15.)  The Court found that the basis for the ALJ's conclusion that Plaintiff retained the ability to perform sedentary work was not clear, and held that "the Court is unable to ascertain whether the ALJ relied on a particular report for determining that claimant's functional capacity is at a sedentary level, or if a report was ignored or discounted, or if the ALJ's own opinions were relied upon when the hypothetical question which included 'sedentary' was posed to the vocational expert." (*Id.* 15-16.)    However, the Court rejected Plaintiff's argument that "the ALJ erred by not basing the determination of her RFC on substantial evidence and by producing a decision that recite[d] virtually none of the evidence, particularly those hundreds of pages which directly contradict[ed] the RFC finding and the idea that plaintiff would never be off-task or suffer significant absences." (*Id.* 14 (citations and quotations omitted).)  The Court concluded that the

ALJ explicitly referred to and relied on Plaintiff's "bipolar condition, her depression and anger outbursts, her treatment at Raritan Bay Mental Health Center and at Princeton House Behavior Health Center, her severe mood changes, mood lability, irritability, and anxiety," and to hold otherwise would be error.   (*Id.*)   The Court also rejected Plaintiff's argument that the "residual functional capacity" ("RFC") determination was "utterly undefended in the decision and call[ed] for a *de facto* finding of disability," because Plaintiff cited nothing in support of this argument. (*Id.* (quotations omitted).)

**B.      ALJ's Second Opinion**

On remand, a second hearing was held on September 9, 2019, before the same ALJ.  A second decision was issued on October 8, 2019, again denying Plaintiff's application for SSI and DIB. (ALJ Second Op., AR 761-770.)  The hearing was attended by an impartial vocational expert. (*Id.* 761.)

On remand, the ALJ noted that there was an additional issue of "whether the insured status requirements of . . . the Social Security Act [were] met."  (*Id.*)   The ALJ concluded that Plaintiff must "establish disability on or before [December 31, 2020] in order to be entitled to a period of disability and disability insurance benefits."  (*Id.*)   The ALJ determined that "[t]he claimant's earnings record shows that the claimant ha[d] acquired sufficient quarters of coverage to remain insured through December 31, 2020," and so she must establish a disability on or before that date. (*Id.*)

The ALJ then set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled, and ultimately concluded Plaintiff was not disabled.  (*Id.* 762-763.)  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020.  (*Id.* 763.)   Second, the ALJ found that

3

Plaintiff has not engaged in substantial gainful activity since March 15, 2020, the alleged onset date. (*Id.*) The ALJ noted that Claimant has worked since the alleged disability onset date, but concluded that her earnings "do not meet the threshold required to constitute substantial gainful activity." (*Id.*) Then, the ALJ concluded that Claimant had the following severe impairments: "history of supraventricular tachycardia stats post ablation and cardiac monitor implantation, history of degenerative change of the lumbar spine, bipolar disorder, history of attention deficit hyperactivity disorder (ADHD), and substance abuse (20 CFR 404.1520(c) and 416.920(c))." (*Id.*)

Next, the ALJ concluded that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* 764.) In making this conclusion, the ALJ concluded that Claimant's physical and mental impairments do not meet or equal any of the listed physical or mental impairments. (*Id.*) The ALJ also concluded that Claimant's mental impairments, considered "singly and in combination," impose moderate limitations "[i]n understanding, remembering, or applying information," interacting with others, in the "ability to concentrate, persist, or maintain pace," and "in her ability to adapt or manage herself." (*Id.* 764-765.)

Then, the ALJ concluded that Plaintiff has the "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no work at heights or around heavy machinery; no direct contact with the public and 'occasional' (defined as one-third of the workday) contact with coworkers or supervisors; and she is limited to simple and repetitive tasks." (*Id.* 765.) In making this conclusion, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these

4

symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* 766.) First, the ALJ noted that despite the opportunity to submit updated medical information after the hearing was held, no additional information was provided. (*Id.* 767.) As a result, relying on the record, the ALJ concluded that there were no updated medical records to support Plaintiff's assertions that she had ongoing limitations due to her heart condition. (*Id.*) Next, with regard to Plaintiff's back pain, he concluded that "[t]here are no updated medical records from any source regarding the claimant's back pain and no evidence of ongoing treatment or limitations due to this condition." (*Id.*) Then, moving to Plaintiff's mental impairments, the ALJ analyzed her detailed medical history, including her diagnoses of "bipolar I disorder, opioid abuse, sedative abuse, and attention deficit disorder of childhood," as well as her treatment history. (*Id.*) The ALJ concluded that "[p]sychiatric treatment records do not document severely debilitating signs on mental status examinations." (*Id.* 768.) Ultimately, the ALJ concluded that

> As discussed above, the medical record does not support the claimant's allegations. The claimant has been diagnosed with degenerative changes in the lumbar spine, and she has complained of pain. The claimant also has a history of supraventricular tachycardia but has undergone ablation and she had a cardiac monitor inserted in 2014. However, as indicated above, there are no updated records regarding these conditions and no evidence of limitations. Due to the claimant's history of heart and back conditions, I have limited the claimant to sedentary level work with no work at heights or around heavy machinery. Furthermore, the claimant testified that she has had a number of jobs working as a receptionist in doctors' offices, as recent as 2018, and the only reason she did not perform well at these jobs was due to poor attendance and mood swings. She did not allege any difficulty with the physical demands of these jobs.
>
> Moreover, the Court did not remand the prior decision due to issues with any of the non-exertional mental limitations in the residual functional capacity. The record, which has had nothing added to it since the prior decision, shows that the claimant has issues with interpersonal relationships, and she describes getting an attitude with co-workers,

therefore she would require a job with limited contact with others, as indicated in the residual functional capacity. She would further be limited to simple and repetitive tasks due to mood swings and other symptoms of depression, as well as medication side effects. There is no evidence to suggest that she is not able to concentrate and focus on simple tasks, as she is able to care for her children and perform housework when she states her back is not hurting her.

As for the opinion evidence, the opinions of the DDS medical consultants in Exhibits 4A and 8A are given some weight because they are based on a review of the medical evidence, but I have credited the claimant's subjective allegations of back pain in limiting her to sedentary work. The opinions of the DDS psychological consultant in Exhibit 8A is given great weight because it is consistent with the medical evidence of record.

(*Id.* 768.)   Then, relying on the opinion of the vocational expert, the ALJ then concluded that

Plaintiff is "unable to perform any past relevant work." (*Id.* 769.)

Finally, in relevant part, the ALJ concluded that "there are jobs that exist in significant

numbers in the national economy that the claimant can perform." (*Id.*)  The ALJ noted that

To determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations at the sedentary exertional level with SVPs of 2, such as:

1) Press operator, DOT Code 715.685-050, with 168,000 jobs in the national economy; and
2) Table worker, DOT Code 739.687-182, with 497,000 job[s] in the national economy.

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the

6

national economy. A finding of "not disabled" is therefore appropriate
under the framework of the above-cited rule.

(*Id.* 770.) Ultimately, the ALJ, on remand, again concluded that "[b]ased on the application for a

period of disability and disability insurance benefits protectively filed on June 18, 2013, the

claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act," and "[b]ased

on the application for supplemental security income protectively filed on June 18, 2013, the

claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act." (*Id.*)

Plaintiff filed the instant Complaint before this court on February 5, 2020 (ECF No. 1), and

briefing concluded on June 28, 2021. (ECF Nos. 10-11.) This matter was assigned to the

undersigned on April 11, 2022. (ECF No. 13.)

## II.   LEGAL STANDARD

### A.   Disability Determination

An individual is "disabled" and therefore eligible for disability insurance benefits if she is

"unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§ 423(d)(1)(A). The individual's impairment must be severe to the point that the individual cannot

engage in his previous work or in "any other kind of substantial gainful work which exists in the

national economy," *i.e.*, work that exists in significant numbers either in the region where such

individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer v. Apfel*,

186 F.3d 422, 427-28 (3d Cir. 1999). A physical or mental impairment is one "that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof for the first four steps of the analysis, and the burden shifts to the Commissioner for the fifth step. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

First, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. 20 C.F.R. § 404.1520(a)(4)(i), (b). Second, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(ii). The claimant must have a "medically determinable impairment" or combination of impairments severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months. *Id.*; *id.* § 404.1509. The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If the claimant satisfies her burden at steps one and two, she proceeds to the third step. At step three, the Commissioner considers the "medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart P. *Id.* § 404.1520(d). The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). If the claimant is able to make a sufficient showing at step three, she is deemed disabled. *Id.* § 404.1520(a)(iii).

However, if the claimant fails to make a sufficient showing at the third step, the analysis proceeds to an evaluation of the claimant's RFC and past relevant work at the fourth step. *Id.* § 404.1520(a)(4)(iv). RFC is the most the claimant can do in a work setting despite her limitations. *Id.* § 404.1545(a)(1). The Commissioner "assess[es] [the claimant's] residual functional capacity

8

based on all the relevant evidence in [her] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 4041520(c), 404.1521, and 404.1523. *Id.* § 404.1545(a)(1)-(3). The Commissioner assesses RFC based on "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).

If the claimant is incapable of performing her past relevant work, the analysis proceeds to the fifth and final step. *See id.* § 404.1520(a)(4)(iv)-(v); *Plummer*, 186 F.3d at 428. At step five, the claimant must be unable to adjust to other work in light of her RFC, age, education, and work experience to be considered disabled. *See id.* § 404.1520(a)(4)(v), (g). Before denying a claim at step five, the Commissioner must show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* § 404.1560(c)(2); *see also Poulos*, 474 F.3d at 92.

### B.      Standard of Review

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the decision, the court determines whether the ALJ's findings are supported by substantial evidence. *See id.*; *see also Poulos*, 474 F.3d at 91. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted).

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Thus, this limitation on a reviewing court's discretion applies "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

III.   **ANALYSIS**

Plaintiff makes three broad arguments in her moving papers. She argues that "the administrative decision does not combine or consider all of plaintiff's impairments at step 3, that [the ALJ] issues an RFC without rationale or evidentiary basis[,] and that [the ALJ] relies on [Vocational Expert ("VE")] testimony without ascertaining the source or accuracy of the VE's assertions." (Pl.'s Mov. Br. 12, ECF No. 10.) The Court will address these arguments in turn.

a.   **The ALJ Adequately Considered Plaintiff's Impairments Singly and in Combination.**

First, Plaintiff asserts that the ALJ was required to "compare the combined effect of all of plaintiff's impairments with one or more of the Commissioner's listings." (*Id.*) Plaintiff then asserts that the ALJ did not compare all of Plaintiff's severe impairments in combination and does

not mention Plaintiff's diagnosis of ADHD in the step three analysis. (*Id.* 16-17.) Specifically, Plaintiff states that the ALJ has an obligation "to consider each impairment individually with the listing specified by the Commissioner as well as the companion approach to combine all severe impairments for a discussion of medical equivalence." (*Id.* 16.) Following, Plaintiff states that she does not dispute the "correct conclusion that plaintiff had not demonstrated that she meets either paragraph 1.04 or paragraph 4.05 of the Commissioner's listing," but rather that the ALJ should have "discussed what the medical evidence does establish regarding these physical impairments, combining those findings in consideration of medical equivalence." (*Id.* 16-17.) (emphasis omitted.)

"When conducting a combination analysis at step three, an ALJ must consider whether a claimant's combination of impairments is equivalent to any listed impairment." *Wright v. Comm'r of Soc. Sec.*, No. 15-3965, 2016 U.S. Dist. LEXIS 137542, at *26 (D.N.J. Oct. 4, 2016). "Further, the ALJ must set forth the reasons for her decision." *Garcia v. Comm'r of Soc. Sec.*, No. 14-7736, 2017 U.S. Dist. LEXIS 45020, at *13 (D.N.J. Mar. 28, 2017) (internal quotations and citations omitted). "An ALJ fails to adequately consider the combination of the claimant's impairments when the ALJ only makes conclusory statements about the combination of impairments, precluding meaningful judicial review." *Wright*, 2016 U.S. Dist. LEXIS 137542, at *26. However, an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). "To be sure, an ALJ need not explicitly discuss every applicable listing or combination of impairments at step three, so long as the opinion, read as a whole, indicates that the ALJ considered the proper factors in arriving at her ultimate conclusion." *Garcia*, 2017 U.S. Dist. LEXIS 45020, at *13.

Plaintiff's arguments that the ALJ did not consider all of her impairments in combination are unpersuasive. The ALJ did consider Plaintiff's combined impairments, including her mental, physical, and cardiac ailments, in a matter that makes it clear that he considered the proper factors in his decision making, and allows for "meaningful judicial review." *Wright*, 2016 U.S. Dist. LEXIS 137542, at *26.

At step three, the ALJ found that Plaintiff did not satisfy Listing 1.04, 5.05, or 12.04, and concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 764.) The ALJ went through a detailed combination analysis and does not make conclusory statements about Plaintiff's impairments or combination of impairments. Specifically, the ALJ contemplated Plaintiff's spine, back, and cardiac issues in his determination that the record provides no evidence of "nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication," or "uncontrolled, recurrent, episodes of cardiac syncope or near syncope documented by ambulatory electrocardiography or other appropriate medical acceptable testing." (*Id.* 764.) He also contemplated Plaintiff's mental impairments, concluding that Plaintiff did not meet the necessary requirements for Paragraph B of Listing 12.04.

Next, Plaintiff asserts that the ALJ does not make explicit mention of Plaintiff's ADHD diagnosis or adequately consider its importance when analyzing Plaintiff's limitations in step three of the analysis. (Pl.'s Mov. Br., 19-20.) While the ALJ may not have identified Plaintiff's severe impairment of ADHD by name, the ALJ contemplated Plaintiff's mental impairments both "singly and in combination" to conclude that the criteria of listing 12.04 was not met. (*Id.*) The Court concludes that the failure to expressly delineate Plaintiff's ADHD amounts to harmless error. *See Marano v. Saul*, No. 20-10804, 2021 U.S. Dist. LEXIS 242136, at *31 (D.N.J. Dec. 20, 2021).

Plaintiff argues that the ALJ does not discuss her ADHD diagnosis and "it disappears at step 3: no mention, no comparison with the Commissioner's designated listing for ADHD at paragraph 12.11 and no combination with plaintiff's bipolar disorder." (Pl.'s Mov. Br., 17.)  However, the Court is unpersuaded by this reasoning.  The ALJ contemplated the severity of Plaintiff's mental impairments "considered singly or in combination" as under the criteria listed in 12.04.  (AR 764-765.)  Specifically, the ALJ analyzed the paragraph B criteria in listing 12.04.[1]  Plaintiff asserts that the ALJ should have also analyzed Listing 12.11.  However, the Paragraph B requirements of Listing 12.04 and 12.11 are *identical*.  Because both listings include the same factors in Paragraph B, the ALJ's failure to expressly address ADHD amounts to harmless error.  Even if the ALJ did not discuss Plaintiff's ADHD explicitly, it is clear that the limitations of Listing 12.11 were considered in the ALJ's analysis of Listing 12.04.

Ultimately, the ALJ did not err at step three of the sequential analysis and made a reasoned decision supported by substantial evidence in the record.  As the Third Circuit has explained, the ALJ is not required to utilize particular language in his analysis, and "satisfies this standard by clearly evaluating the available medical evidence in the record and then setting forth that

---

[1] To satisfy 12.04B, the claimant must have one extreme limitation or two marked limitations in the following domains:

    1. Understand, remember, or apply information;

    2. Interact with others;

    3. Concentrate, persist, or maintain pace; and

    4. Adapt or manage oneself.

*See also Andrew S. v. Comm'r of Soc. Sec.*, No. 18-17212, 2022 U.S. Dist. LEXIS 46507, at *15 (D.N.J. Mar. 16, 2022) (emphasis added). ("However, Listing 12.11 requires the claimant to satisfy 12.11A and 12.11B, and *12.11B is identical to 12.04B*.")

evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470-71 (3d Cir. 2005).

"In seeking reversal or remand, Plaintiff bears the burden of demonstrating that the ALJ has committed harmful error." *Demarco v. Kijakazi*, No. 21-16153, 2022 U.S. Dist. LEXIS 142995, at *26-27 (D.N.J. Aug. 10, 2022). Here, the Court is presented with only harmless errors that do not warrant reversal and remand.

b. **The RFC is Supported by Substantial Evidence.**

Next, Plaintiff argues that the "RFC is not based on substantial evidence." (Pl.'s Mov. Br., 20.) Specifically, Plaintiff asserts that the ALJ's conclusion that Plaintiff have "no direct contact with the public and "occasional" (defined as one-third of the workday) contact with co-workers or supervisors," and be "limited to simple and repetitive tasks" is "not explained in the recitation of evidence or properly supported by the record. (AR 765.) This Court disagrees.

Substantial evidence supports the ALJ's finding that Plaintiff can have occasional contact with supervisors and coworkers. The Court's February 28, 2019 remand order solely involved the ALJ's sedentary limitation, which he properly addressed and was not raised in this appeal. In addition, the ALJ also made specific findings related to Plaintiff's arguments before this Court. (AR 768.)

"Social Security Ruling 83-10 defines 'occasionally' as 'occurring from very little up to one-third of the time.'" . . . Occasional contact thus concerns the frequency, not the quality, of the interaction." *Carmelo R. v. Comm'r of Soc. Sec.*, No. 20-6874, 2022 U.S. Dist. LEXIS 115837, at *11 (D.N.J. June 30, 2022) (internal citations omitted). Following, there is substantial evidence in the record that Plaintiff can engage in occasional contact with others when she needs to

accomplish specific tasks or goals, which would permit her to engage in occasional interaction with coworkers or supervisors.

Nevertheless, the record also indicates that Plaintiff has poor interpersonal skills and would be well suited for a job with no public contact. The ALJ discusses Plaintiff's mood swings specifically, as well as her behavioral impairments and limitations. He then discussed the impact of Plaintiff's mental disabilities on her daily life, and engaged in a detailed analysis of her mental impairments:

> Returning to the claimant's mental impairments, progress notes from Dr. Jayanta Pal dated August 2012 showed the claimant had begun treatment for her bipolar disorder. On intake, she was given a GAF of 50. Mood was anxious, but mental status was otherwise unremarkable. .... She was seen for medication management and overall was doing well, but she reported some depression and anger outbursts.... The claimant was self-referred to Princeton House Behavioral Health Center from December 26, 2014 to January 15, 2015 for severe mood changes. She was diagnosed with bipolar I disorder, opioid abuse, sedative abuse, and attention deficit disorder of childhood. ... She again presented from February 6 to February 12, 2015 for depression with manic and anxiety symptoms; however, she stopped attending the program on February 19 because "detectives were there to pick her up." (Exhibit 15F). She was again admitted from March 18 to April 17 of 2015 for symptoms related to bipolar disorder. The claimant reported ongoing mood lability, irritability and anxiety. She was noted to be pregnant and was not taking any medications. ... The claimant's mental status examination on February 2, 2015 revealed her to be well groomed, she had agitated and restless behavior, but she was attentive, cooperative, she had adequate and appropriate affect which was constricted, her speech was normal, she had intact cognition, normal thought process, and normal thought content. (Exhibit 17F at 5-6). Again, there are no updated medical records regarding the claimant's mental impairments or any evidence of ongoing treatment or limitations.

> The record, which has had nothing added to it since the prior decision, shows that the claimant has issues with interpersonal relationships, and she describes getting an attitude with co-workers, therefore she would require a job with limited contact with others, as indicated in the residual functional capacity.

(AR 767-768) (emphasis added). Here, while Plaintiff has identified some evidence that might permit a court to resolve the RFC factual inquiry slightly differently, this does not satisfy Plaintiff's burden on appeal. *See Nalej v. Berryhill*, No. 16-3079, 2017 U.S. Dist. LEXIS 207893, at *36 (D.N.J. Dec. 19, 2017). There is sufficient evidence in the record of Plaintiff's struggles with her mood disorder and anxiety to support a finding that she has the residual functional capacity to perform work with no contact with the public.

Finally, Plaintiff argues that the ALJ's determination that Plaintiff can perform unskilled work on a sustained basis is unsupported by the record. This Court disagrees. The ALJ's ruling expressly addressed this claim, as he noted that: "[Plaintiff] would further be limited to simple and repetitive tasks due to mood swings and other symptoms of depression, as well as medication side effects. There is no evidence to suggest that she is not able to concentrate and focus on simple tasks, as she is able to care for her children and perform housework when she states her back is not hurting her." (AR 768.) It is clear that the ALJ's determination on this issue is supported by substantial evidence in the record.

Ultimately, "[r]emand is warranted only if the ALJ's error was not harmless." *Little v. Berryhill*, No. 2:17-cv-11708, 2019 U.S. Dist. LEXIS 82127, at *22-23 (D.N.J. May 13, 2019). Here, there is sufficient evidence to support the finding that Plaintiff can engage in work with occasional contact with coworkers, as well as evidence to support a finding that she is simultaneously unable to engage in contact with the public.

c. **The ALJ's Step Five Determination is Supported by Substantial Evidence in the Record.**

Plaintiff next challenges the ALJ's determination that, based on her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that

16

Plaintiff could perform.  Specifically, Plaintiff asserts that "the ALJ began his inquiry of the VE without instructing him to limit any response to information contained in the DOT, without asking (at the close of his inquiry) whether the VE's testimony was consistent with the DOT, without ascertaining whether there were conflicts with information contained in the DOT or whether any of the VE's testimony was based on the VE's experience because the DOT provided no such information" (Pl.'s Mov. Br., 33.)  However, the Court finds that the ALJ appropriately relied on the testimony of the vocational expert, and this argument is unavailing.

> "As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014)(citing SSR 00-4p, 2000 SSR LEXIS 8 at *4, 2000 WL 1898704, at *2 (Dec. 4, 2000)). "To ensure consistency, courts have imposed an obligation on ALJs to '[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the [DOT].'" *Id.* (quoting SSR 00-4p, 2000 SSR LEXIS 8 at *1). "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Id.* (quoting *Burns*, 312 F.3d at 127). "An ALJ's failure to comply with these requirements may warrant remand in a particular case[,]" but "the presence of inconsistencies does not mandate remand, so long as "'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (quoting *Rutherford*, 399 F.3d at 557).
>
> *Socha v. Saul*, No. 2:18-cv-10307, 2021 U.S. Dist. LEXIS 72751, at *10-11 (D.N.J. Apr. 15, 2021).

The VE testified that he reviewed the applicable portion of the file, listened to Plaintiff's testimony during the hearing, and was able to outline her vocational profile based on his understanding as "outpatient receptionist, 237.367-038, listed at sedentary, SVP of 4." (AR 797.) The VE was able to identify two sample occupations that would fit within Plaintiff's profile and opine on whether someone of Plaintiff's profile with additional limitations would be able to find

work in the national economy. The ALJ concluded that the vocation expert's testimony was "consistent with the information contained in the Dictionary of Occupational Titles." (AR 770.)

It appears that the ALJ did not specifically ask whether the VE's testimony was consistent with the DOT, elicit an explanation of any conflict, or explain how that conflict was resolved. However, silence on specific issues "does not necessarily create a conflict requiring remand." *Socha*, 2021 U.S. Dist. LEXIS 72751, at *15. First, it is not clear that Plaintiff has identified any actual conflict between the VE's testimony and the DOT, but rather Plaintiff raises issues where the DOT may be silent. Nonetheless, remand is not required "so long as substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (internal citation and quotation omitted.)

Here, the Court finds that despite the ALJ's failure to ask whether the VE's testimony is in conflict with the DOT, substantial evidence exists to support the ALJ's step 5 finding. *See Jones v. Barnhart*, 364 F.3d 501 (3rd Cir. 2004); *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005). The ALJ asked the VE hypothetical questions consistent with Claimant's limitations, including how much time Plaintiff can spend in contact with supervisors and co-workers. (AR 798.) The ALJ clarified that the appropriate level of contact for Plaintiff consists of "occasional" contact with supervisors and co-workers. (*Id.*)

Notably, Plaintiff's counsel, despite his examination of the VE, never objected to or challenged the VE's testimony as inconsistent with the DOT. *See Tonti v. Saul*, No. 20-92, 2021 U.S. Dist. LEXIS 25994, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony.")

In short, the ALJ reasonably relied on the testimony of the vocational expert, which thus provided substantial support for the step five determination.

**IV.   <u>CONCLUSION</u>**

Ultimately, it is not the role of this Court to act as a fact finder.  The Court concludes that there is "substantial evidence" to support the ALJ's decision.  *See McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360-61 (3d Cir. 2004).  For the foregoing reasons, and for good cause shown, this Court **AFFIRMS** the decision of the Administrative Law Judge.  An appropriate Order follows.


Date: <u>December 28, 2022</u>                                   <u>*/s/ Georgette Castner*</u>

                                                                        GEORGETTE CASTNER, U.S.D.J.

19